SO ORDERED.

SIGNED this 08 day of April, 2013.

_J. Rich Leonard_
**J. Rich Leonard**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

**TANGLEWOOD FARMS, INC. OF**
**ELIZABETH CITY,**

     **DEBTOR.**

**CASE NO. 10–06719–8–JRL**

**CHAPTER 7**

---

**JAMES B. ANGELL, CHAPTER 7**
**TRUSTEE,**

     **PLAINTIFF,**

       **v.**

**MEHERRIN AGRICULTURAL &**
**CHEMICAL COMPANY AND CNH**
**CAPITAL AMERICA LLC,**

     **DEFENDANTS.**

**ADVERSARY PROCEEDING**
**NO.  12–00186–8–JRL**

---

### ORDER

      This matter came before the court on the motion to dismiss this adversary proceeding for

failure to state a claim upon which relief can be granted, filed by CNH Capital America LLC ("CNH

Capital"), which James B. Angell ("trustee") has opposed.  A hearing on the matter was held on

1

March 1, 2013 in Raleigh, North Carolina.   At the conclusion of the hearing, the court took the matter under advisement.

## BACKGROUND[1]

Tanglewood Farms, Inc. of Elizabeth City ("debtor") filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on August 20, 2010, which was subsequently converted to one under chapter 7 on July 12, 2011.  The debtor, a granary operation in Pasquotank County, North Carolina, was operated by its president and sole shareholder,  James H. Winslow ("Mr. Winslow").   In that capacity, Mr. Winslow oversaw and made operational decisions regarding the granary and facilitated the exchange of corn, wheat, and soybeans ( collectively "grain") between the debtor, Winslow Farms (Mr. Winslow's personal farming operation), and other local farmers. On August 23, 2010, Mr. Winslow and his wife, Billie Winslow ("Mrs. Winslow") (collectively "Winslows") filed a joint voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The relationship between the debtor, Mr. Winslow and Winslow Farms was so close that many identified them as one entity.  See In re Tanglewood Farms, Inc. of Elizabeth City, No. 10–06719, 2011 WL 672060, at *1–2 (Bankr. E.D.N.C. Feb. 18, 2011).  Despite this tripartite relationship, this court denied the motion to consolidate the Winslows' individual case with the debtor's case on February 18, 2011. See id.

Since 2007, the operations of the debtor and Winslow Farms were financed primarily by CNH Capital and Meherrin Agricultural & Chemical Company ("Meherrin").   Between February 20, 2007 and February 18, 2009, numerous lines of credit and security agreements were executed

---

[1]These facts are a recitation of the allegations in the complaint, which is viewed in a light most favorable to the trustee, the non–moving party.  GE Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).

in favor of Meherrin by Mr. Winslow, individually and as the president of the debtor, and Mrs. Winslow (collectively "lines of credit").[2]  Although originally executed in favor of Meherrin, six of the lines of credit were subsequently assigned to CNH Capital.  To secure repayment and performance of the joint obligations thereunder, CNH Capital received a security interest in crops, farm products, inventory, livestock, accounts and documents of title, as well as any proceeds resulting from subsequent disposition.  CNH Capital perfected its security interests by filing financing statements with the North Carolina Secretary of State against the Winslows on February 21, 2007, and the debtor on March 12, 2007.  Both of these financing statements provided the following description of the collateral that was subject to the security interests:

> Crops: All growing and harvested crops, annual and perennial crops and other plant products now growing or hereafter to be planted or harvested.  Farm Products: All Farm products, including[] but not limited to, all seed, fertilizer, feed, medicines, harvested and stored grain, milk and other products used in debtor's farming operations.  Inventory: All raw material[,] work in progress, or materials used or consumed in debtor's business.  Equipment: All farm and business equipment including, but not limited to, all machinery, vehicles & tools whether now owned or hereafter acquired.  Livestock: All livestock, poultry and fish.  Including but not limited to other animals produced, used or held for commercial or farming purposes, and unborn young.  Accounts and documents of title: including but not limited to, milk contract rights, warehouse receipts.  Collateral includes proceeds.

---

[2]The six lines of credit assigned to CNH Capital can be summarized as follows:

| Date of Execution | Maximum Principal Balance |
|---|---|
| February 20, 2007 | $1,000,000.00 |
| February 20, 2007 | $1,750,000.00 |
| January 7, 2008 | $5,000,000.00 |
| February 15, 2008 | $5,500,000.00 |
| May 2, 2008 | $5,500,000.00 |
| February 18, 2009 | $7,500,000.00 |

3

The funds distributed under the lines of credit were utilized by Mr. Winslow, individually, to support and fund the operations of Winslow Farms.

From August 5, 2008 to February 23, 2010, CNH Capital received payments totaling approximately $9,457,362.06 in satisfaction of the joint obligations under the lines of credit. These payments came from Mr. Winslow, his crop insurance carrier and third parties, who issued joint checks payable either to: (1) Mr. Winslow and CNH Capital; (2) the debtor and CNH Capital; or (3) the debtor, CNH Capital and Meherrin. Approximately $3,902,292.09 was paid by the debtor or its customers through third–party joint checks listing CNH Capital as a co–payee.[3]

The trustee filed a complaint initiating this adversary proceeding on August 19, 2012, asserting five causes of action against Meherrin and CNH Capital for avoidance and recovery of alleged preferential, fraudulent and unauthorized postpetition transfers pursuant to various sections of the Bankruptcy Code and the General Statutes of North Carolina. The complaint, however, only asserts two causes of action against CNH Capital. The first seeks to avoid, as constructively fraudulent, the obligations incurred by the debtor and the security interests granted to CNH Capital under the six lines of credit. The second alleges that the payments received by CNH Capital in satisfaction of those obligations during the four–year period preceding the petition date, are avoidable as actual or constructively fraudulent transfers under §§ 544(b), 548(a)(1)(A) and (B) of the Bankruptcy Code and the North Carolina Uniform Fraudulent Transfer Act, N.C. Gen. Stat. § 39–23.1 et seq. After receiving an extension of time in which to respond and reissuance of the summons, CNH Capital filed the motion to dismiss and supporting memorandum of law currently

---

[3]The balance of the payments received by CNH Capital ($5,555,069.97) were made by Mr. Winslow ($4,467,284.39) and unknown sources ($1,087,785.58).

before the court on October 19, 2012.[4]  After receiving several extensions of time in which to

respond, the trustee filed his response and memorandum of law in opposition to the motion to

dismiss on January 9, 2013.

## DISCUSSION

### A. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires every pleading to contain a

"short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.

Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  A complaint must include "enough facts to state a claim to

relief that is plausible on its face."  Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737,

745 (Bankr. E.D.N.C. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007) (emphasizing that a complaint that provides "labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." (citing Papasan v. Allain,

478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)))).  "[W]here the well–pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S.

662,  677–78,  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

---

[4]On September 17, 2012, the court entered an order extending the deadline in which CNH
Capital was required to answer or otherwise respond to the complaint to October 19, 2012.  To
correct an error, the trustee reissued the summons and served a copy of the same on CNH Capital
on September 27, 2012, which further extended the deadline to October 29, 2012.

Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."(internal citations, quotation marks and brackets omitted)).  The veracity of allegations in the complaint that are well–pled will be presumed in accessing "whether they plausibly give rise to an entitlement to relief[,]" Ber Care, 409 B.R. at 747 (citation omitted); however, the court will not assume the veracity of "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) (citation and internal quotation marks omitted).

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7009 of the Federal Rules of Bankruptcy Procedure, requires a party alleging fraud to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 7009.  The requirement of Rule 9(b) "is not intended to be an insurmountable hurdle for claimants to overcome; the complaint must give the party adequate notice of the charges-it need not marshall all of the evidence against him." Ivey v. First–Citizens Bank and Trust Co. (In re Whitley), No. 12–02028, 2013 WL 486782, at *13 (Bankr. M.D.N.C. Feb. 7, 2013) (quoting Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.), 322 B.R. 440, 448 (Bankr. N.D. Okla. 2003)).  Consistent with this principle, courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [the defendant] will have to prepare a defense at trial, and (2) that plaintiff has substantial pre–discovery evidence of those facts."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

### B. Avoidance and Recovery of Alleged Fraudulent Transfers

Pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to proceedings in bankruptcy by Rules 7008, 7009 and 7012 of the Federal Rules of Bankruptcy Procedure, CNH Capital asserts that both causes of action asserted by the trustee must be dismissed for failure to state a claim upon which relief may be granted.

Specifically, CNH Capital contends that the complaint fails to provide sufficient facts to support the allegations that the debtor was insolvent and did not receive reasonably equivalent value in exchange for incurring the obligations and subjecting all of its assets to security interests in favor of CNH Capital under the lines of credit.  Absent from the complaint, according to CNH Capital, are any specific facts identifying to whom the proceeds of the lines of credit were disbursed and any detail revealing whether or how the proceeds were utilized.  According to CNH Capital, the complaint establishes that the execution of the lines of credit and the subsequent payments remitted by the debtor mirrors the standard loan transaction contemplated in Beaman v. Barth (In re Amerilink, Ltd.), No. 10–00164, 2011 WL 1048848 (Bankr. E.D.N.C. Mar. 18, 2011). CNH Capital contends that the complaint, as alleged, lacks sufficient factual allegations demonstrating the debtor's insolvency on the dates the lines of credit were executed.  CNH Capital argues that Oliver v. Cooper (In re Bateman), No. 11–00387, 2012 WL 1110080 (Bankr. E.D.N.C. Apr. 2, 2012) (hereinafter "Cooper I") and Oliver v. Cooper (In re Bateman), No. 11–00387, 2012 WL 3061181 (Bankr. E.D.N.C. July 26, 2012) (hereinafter "Cooper II"), prevents the trustee from utilizing the debtor's schedules, filed over three years after the execution of the first line of credit, to demonstrate the plausibility of his allegation the debtor was insolvent on the dates of the challenged transfers or became insolvent as a result.  To the extent that the debtor's incurrence of the obligations is not

7

avoidable, neither are the payments received in satisfaction of those obligations because the debtor received value in exchange for each payment pursuant to § 550(b)(1) of the Bankruptcy Code. Alternatively, CNH Capital contends that the complaint fails to plead facts sufficient to support the inference that the payments alleged to be constructively fraudulent were proceeds the debtor received from the sale of grain that was not subject to CNH Capital's continuing security interest in Mr. Winslow's grain, crops and farm products. Finally, the portions of the complaint challenging the payments made by the debtor as actual fraudulent transfers, fail to meet the particularity requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure. Each of CNH Capital's contentions for dismissal will be addressed in turn.

Section 548(a) of the Bankruptcy Code permits the trustee to avoid, as fraudulent, any transfer of a debtor's interest in property or obligation incurred by the debtor within two years of the petition date if the debtor

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an

8

employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1); Ber Care, 409 B.R. at 756.  A trustee may avoid fraudulent transfers as either actually or constructively fraudulent. 11 U.S.C. § 548(a)(1)(A), (B).  "In contrast to actual fraud, a claim for constructive fraud focuses on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." Angell v. Endcom, Inc. (In re Tanglewood Farms, Inc. of Elizabeth City), ____ B.R. ____, ____, 2013 WL 692975, at *3 (Bankr. E.D.N.C. Feb. 26, 2013) (citation omitted).  Section 550 of the Bankruptcy Code, in turn, permits the trustee to recover fraudulently transferred property or its value from (1) the "initial transferee" of the fraudulent transfer or the entity for whose benefit such transfer was made; or (2) any immediate transferee of the initial transferee. 11 U.S.C. § 550.

Pursuant to § 544(b) of the Bankruptcy Code, the trustee may avoid any transfer that is voidable under the Uniform Fraudulent Transfer Act, as adopted in North Carolina ("UTFA") by a creditor holding an allowed unsecured claim pursuant to § 502 of the Bankruptcy Code.  11 U.S.C. § 544(b).  The UTFA "contains both actual and constructive fraud provisions, much like Section 548 of the Bankruptcy Code." Allman v. Wappler (In re Cansorb Indus. Corp.), No. 07–6072, 2009 WL 4062220, at *8 (Bankr. M.D.N.C. Nov. 20, 2009).  The portion of N.C. Gen. Stat. § 39–23.4 dealing with constructive fraud provides that a transfer is constructively fraudulent where a debtor transfers property or incurs an obligation without receiving reasonably equivalent value in exchange and either the debtor was engaged in a business transaction for which its remaining assets were unreasonably small in relation to the transaction or knew that the debts incurred were beyond its

9

ability to pay.  N.C. Gen. Stat. § 39–23.4(a)(2).[5]

"Adequate pleadings under § 548(a)(1)(B) include a list of the alleged fraudulent transfers, identification of the consideration received by the transferee, and information concerning why the consideration was not equivalent in value." Endcom, 2013 WL 692975, at *4 (citing Barth, 2011 WL 1048848, at *3); Ber Care, 409 B.R. at 756.   To avoid payments as constructively fraudulent, the trustee must prove by a preponderance of the evidence, that the debtor did not receive reasonably equivalent value in exchange for the challenged payments and the debtor was insolvent. Endcom, 2013 WL 692975, at *3 (citing 11 U.S.C. § 548(a)(1)(B)).  When evaluating reasonably equivalent value "[t]he focus is on the consideration received by the debtor, not on the value given by the transferee. The purpose of fraudulent transfer law is the preservation of the debtor's estate for the benefit of its unsecured creditors." Harman v. First Am. Bank of Md. (In re Jeffery Bigelow Design Grp., Inc.), 956 F.2d 479 (4th Cir. 1992).  A large or significant disparity between what the debtor gave and what it received in exchange typically precludes a finding that the debtor received reasonably equivalent value. 5 Collier on Bankruptcy ¶ 548.05[2][a],[b] (Alan N. Resnick & Henry

---

[5]Additionally, N.C. Gen. Stat. § 39–23.5 states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.C. Gen. Stat. § 39–23.5.

J. Sommer eds., 16th ed. rev. 2012) ("Courts generally find a lack of reasonably equivalent value when the transfer or obligations benefits a third party . . . . hold[ing] that such transfers provide no value to the debtor.").   "Although reasonably equivalent value may be the satisfaction of the antecedent debt or obligation of the debtor, it is not the satisfaction or guarantee of the debt of another." <u>Endcom</u>, 2013 WL 692975, at \*4 (citing <u>Tourtellot v. Huntington Nat'l Bank (In re Renegade Holdings, Inc.)</u>, 457 B.R. 441, 444 (Bankr. M.D.N.C. 2011); <u>Dietz v. St. Edwards Catholic Church (In re Bargfrede)</u>, 117 F.3d 1078, 1080 (8th Cir. 1997) (per curium); <u>Leonard v. Norman Vinisky Residuary Tr. (In re Jolly's, Inc.)</u>, 188 B.R. 832, 842 (Bankr. D. Minn. 1995)).

Section 101(32)(A) of the Bankruptcy Code provides that a debtor is insolvent where "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A).  To prevail "the Trustee must allege facts sufficient to show that the Debtor was insolvent on the date of the transfer." <u>Cooper II</u>, 2012 WL 3061181, at \*3 (indicating that "the insolvency requirement of § 547(b)(3) [for preference actions] and the insolvency requirement of § 548(a)(1)(B)(ii)(I) [for constructively fraudulent transfer actions] are substantively the same."); <u>Ber Care</u>, 409 B.R. at 752 ("[A] debtor must be insolvent on the date of the transfer . . . the trustee must allege facts sufficient to show that such insolvency is plausible.").  To determine insolvency, courts in the Fourth Circuit apply a "balance sheet test," which "involves the comparing of the fair market value of the debtor's assets at the time of the transaction with the debtor's liabilities on the same date." <u>Ruby v. Ryan (In re Ryan)</u>, 472 B.R. 714, 727 (Bankr. E.D. Va. 2012) (citation omitted); <u>Matson v. Strickland (In re Strickland)</u>, 230 B.R. 276, 281 (Bankr. E.D. Va. 1999) ("The balance sheet test for insolvency determines whether the debtor was insolvent when the transfer was made . . . comparing . . . the fair market value of the debtor's assets at the time of the transaction with

11

the debtor's liabilities on the same date."(citations omitted)).

In assessing the plausibility of the debtor's insolvency on the date of the challenged transfers, this court has taken into consideration the debtor's schedules, which were filed at or near the petition date and after the transfers at issue. See Angell v. Augusta Seed Corp. (In re Tanglewood Farms, Inc. of Elizabeth City), No. 12–00192, 2013 WL 474704, at *3 (Bankr. E.D.N.C. Feb. 7, 2013); Angell v. First Eastern, LLC (In re Caremerica, Inc.), No. 08–00157, 2011 WL 1457223, at *3 (Bankr. E.D.N.C. Apr. 15, 2011); but see Cooper I, 2012 WL 1110080, at *2–3. In Augusta Seed, this court observed that "the egregious nature of the debtor's insolvency as of the petition date, as indicated in the debtor's schedules raises an inference that the debtor's insolvency predated the petition to the time of the alleged fraudulent transfers." 2013 WL 474704, at *3 (denying the motion to dismiss because the complaint was sufficient to demonstrate that the transfers, made during the two–year period preceding the bankruptcy filing, were made while the debtor was insolvent or left it with unreasonably small capital as a result).[6]  Likewise in First Eastern, four payments made by the debtor between four and seven months prior to the petition date were held to be made while the debtor was insolvent based on the debtor's schedules listing total assets of $9,842.69 and total liabilities of $4,686,715.94 and claims of $15,823,184.00.  2011 WL 1457223, at *3.  In Cooper I, however, "[t]he Debtor's assets and liabilities as indicated on the Schedules nearly two years subsequent to the date of the transfer cannot show that it is plausible the

---

[6]Augusta Seed, an associated adversary proceeding in the debtor's underlying bankruptcy case, established the two–year limit by which the court would infer, for purposes of a motion to dismiss, the plausibility that the debtor's egregious insolvency evidenced by its schedules predated the petition date to the time of the challenged transfers. 2013 WL 474704, at *3.  The three payments challenged in Augusta Seed were made on account of Mr. Winslow's obligations and took place between August 20, 2008 and the petition date. Id. at *2–3.

Debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer." 2012 WL 1110080, at *2 (stating that "[e]ven if the Court were to take judicial notice of the Debtor's schedules, there are no facts in the complaint supporting the Debtor's insolvency on or about the date of the transfer."). The schedules revealed that, as of the petition date, the debtor's total liabilities exceeded total assets by approximately $60,000.00. Id. at *2. Neither <u>Cooper I</u> nor <u>Cooper II</u> prevent, as CNH Capital suggests, consideration of a debtor's schedules in determining the plausibility of a debtor's insolvency on the date of a prepetition transfer. See <u>Augusta Seed</u>, 2013 WL 474704, at *3; <u>First Eastern</u>, 2011 WL 1457223, at *3.

Considering the complaint in its entirety, it alleges that the debtor did not receive reasonably equivalent value in exchange for executing the lines of credit in favor of CNH Capital and because the lines of credit are avoidable, the corresponding payments the debtor remitted to CNH Capital under the lines of credit are also avoidable as constructive fraudulent transfers. Specifically, the debtor did not receive any consideration for becoming obligated to CNH Capital for the security interests granted in its equipment, farm products, inventory, accounts, crops and other property to secure repayment. The debtor did not receive reasonably equivalent value because Mr. Winslow, not the debtor, was the beneficiary of the funds distributed under the lines of credit. Because the debtor was not the direct beneficiary of the proceeds distributed under the lines of credit, it received less than reasonably equivalent value in exchange for the payments it made to CNH Capital in satisfaction of its obligations thereunder. With respect to the debtor's insolvency, the complaint alleges that the debtor was insolvent both when it executed the lines of credit and made the required payments to CNH Capital or became insolvent as a result thereof. The complaint relies almost exclusively upon a recitation of the debtor's assets and liabilities indicated on its schedules to

13

support the debtor's insolvency, which reveal total assets of $3,425,654.64 and total liabilities of $38,290,562.04 as of the petition date.  The debtor's claims register lists sixty–eight claims totaling $25,376,451.58, approximately $2,800,347.57 of which have remained outstanding since 2007.  The proceeds realized from the debtor's grain sales were, according to the complaint, diverted into a fictitious bank account to avoid paying its obligations to CNH Capital and other secured lien creditors.   Additionally, the trustee contends that by conveying security interests to in all of its assets to secure its obligations under the lines of credit, the debtor was engaged in business for which its remaining unencumbered property was unreasonably small capital.

The complaint alleges, with sufficient plausibility, that the proceeds distributed under the lines of credit went almost exclusively for the personal benefit of Mr. Winslow and, therefore, the debtor did not receive reasonably equivalent value in exchange for the obligations it incurred and security interests granted to CNH Capital under all six lines of credit.  See Endcom, 2013 WL 692975, at *4.  It is apparent that the funds distributed to the debtor, if any, were not reasonably equivalent to the substantial obligations it undertook by executing the lines of credit. See, e.g., id. at *5 (finding allegations that all the loan proceeds were deposited in a co–obligor's personal bank account, were sufficient to demonstrate that the debtor did not receive reasonably equivalent value in exchange for the obligations it incurred); Jeffery Bigelow Design Grp., 956 F.2d at 485 (emphasizing that reasonably equivalent value can come from a third party, but a transfer solely for the benefit of that third party does not establish reasonably equivalent value).

As discussed above and in Augusta Seed, the egregious nature of the debtor's insolvency on the petition date, according to its schedules, is sufficient to demonstrate that the debtor was or became insolvent as a result of the incurring obligations under the lines of credit executed and

14

payments made to CNH Capital within the two–year period preceding the petition date. The complaint only plausibly supports an inference that the debtor was or became insolvent by executing the line of credit on February 18, 2009. This inference is supported by the allegation that Mr. Winslow and the debtor typically paid off the obligations to CNH Capital and Meherrin as they came due until 2009. Mr. Winslow and the debtor were unable to meet these outstanding obligations because unfavorable weather conditions in 2008 and 2009 caused both farming operations to suffer. To extend this inference of the debtor's insolvency to the remaining lines of credit and payments, all of which were executed or remitted prior to 2009, would contradict the debtor's statement of financial affairs, which indicates it reported income of $20,470,302.00 in 2008.[7] Based on the debtor's statement of financial affairs and the lack of sufficient facts concerning the debtor's financial status on the dates the lines of credit were executed, the egregious insolvency on the petition date is not sufficient to plausibly demonstrate that the debtor was or became insolvent by executing the lines of credit on February 20, 2007, January 7, 2008, February 15, 2008, and May 2, 2008. To the extent that these lines of credit are not avoidable as constructively fraudulent transfers, neither are the payments received by CNH Capital in satisfaction of those obligations. See Endcom, 2013 WL 692975, at *6 n. 5 (indicating that "[n]umerous courts addressing whether a debtor's transfer of funds in satisfaction of an outstanding obligation is constructively fraudulent, have concluded that the debtor received reasonably equivalent value in exchange." (citations omitted)). Pursuant to the lines of credit, CNH Capital received forty–two payments totaling

---

[7]In direct contradiction to the trustee's allegations of insolvency dating back to 2007, the debtor's statement of financial affairs indicates that the debtor had income of $20,470,302.00 and $3,000,000.00 in 2008 and 2009, respectively. To the extent that its schedules reflect debts originating in 2007, there is no assertion that these obligations, all of which arise out of grain storage contracts, became due in 2007.

15

$3,902,292.09 from the debtor or by third–party checks listing CNH Capital as co–payee between July 24, 2009 and February 23, 2010.[8]  These payments were applied to Loan Nos. 61872005,

---

[8]The dates and corresponding amounts of the forty–two payments received by CNH Capital are summarized as follows:

| Date | Amount of Payment |
|---|---|
| July 24, 2009 | $17,580.00 |
| July 27, 2009 | $5,228.18 |
| July 27, 2009 | $20,903.24 |
| July 29, 2009 | $10,345.36 |
| July 29, 2009 | $25,286.57 |
| July 29, 2009 | $20,800.83 |
| August 3, 2009 | $12,754.40 |
| August 3, 2009 | $7,796.58 |
| September 8, 2009 | $3,905.09 |
| September 10, 2009 | $5,883.76 |
| September 22, 2009 | $2,503.90 |
| October 2, 2009 | $15,583.41 |
| October 2, 2009 | $14,607.81 |
| October 19, 2009 | $7,563.55 |
| October 19, 2009 | $29,619.71 |
| October 30, 2009 | $102,115.93 |
| November 9, 2009 | $92,101.48 |
| November 9, 2009 | $39,631.89 |
| November 9, 2009 | $6,941.90 |
| November 23, 2009 | $83,677.35 |
| November 30, 2009 | $61,696.56 |

61872006 and 61872007, all of which were listed on the line of credit executed on February 18, 2009.  Because the trustee has stated a claim for relief under § 548(a)(1)(B) for avoidance of the February 18, 2009 line of credit that is plausible, he has also sufficiently alleged that these forty–two

| | |
|---|---|
| December 2, 2009 | $665,239.29 |
| December 18, 2009 | $329,080.24 |
| December 23, 2009 | $24,625.68 |
| December 28, 2009 | $8,267.44 |
| December 31, 2009 | $149,015.28 |
| December 31, 2009 | $448,947.19 |
| December 31, 2009 | $8,117.65 |
| January 7, 2010 | $8,246.20 |
| January 14, 2010 | $7,998.39 |
| January 15, 2010 | $355,780.07 |
| January 22, 2010 | $23,730.63 |
| January 22, 2010 | $16,637.97 |
| January 25, 2010 | $15,753.29 |
| January 29, 2010 | $555,699.32 |
| January 29, 2010 | $16,457.08 |
| January 31, 2010 | $63,691.23 |
| February 4, 2010 | $302,361.93 |
| February 11, 2010 | $125,062.11 |
| February 23, 2010 | $148,795.73 |
| February 23, 2010 | $17,483.07 |
| February 23, 2010 | $24,501.80 |
| **Total Payments** | **$3,902,292.09** |

17

payments in satisfaction thereof are avoidable as constructively fraudulent transfers.

CNH Capital contends, in the alternative, that the grain Mr. Winslow sold to the debtor was subject to CNH Capital's perfected security interest in his grain, crops and farm products.  Any payments made by the debtor, according to CNH Capital, were supported by its continuing security interest in Mr. Winslow's grain pursuant to N.C. Gen. Stat. § 25–9–315 and § 25–9–336 and, therefore, the portion of the trustee's cause of action seeking avoidance and recovery of the payments received by CNH Capital should be dismissed.

N.C. Gen. Stat. § 25–9–315, governing a secured party's rights upon disposition of its collateral, provides that "[a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien . . . ." N.C. Gen. Stat. § 25–9–315(a)(1), cmt. 2 ("In many cases, a purchaser or other transferee of collateral will take free of a security interest . . . . and a security interest does not continue in collateral, if the secured party authorized the disposition, in the agreement that contains the security agreement or otherwise."). N.C. Gen. Stat. § 25–9–336 provides as follows:

> (a) "Commingled goods." – In this section, "commingled goods" means goods that are physically united with other goods in such a manner that their identity is lost in a product or mass.
>
> (b) No security interest in commingled goods as such. – A security interest does not exist in commingled goods as such. However, a security interest may attach to a product or mass that results when goods become commingled goods.
>
> (c) Attachment of security interest to product or mass. – If collateral becomes commingled goods, a security interest attaches to the product or mass.
>
> (d) Perfection of security interest. – If a security interest in collateral is perfected before the collateral becomes commingled goods, the security interest that attaches to the product or mass under subsection (c) of this section is perfected.

18

N.C. Gen. Stat.§ 25–9–336.

The payments received by CNH Capital pursuant to the lines of credit, which are chronicled and attached to the complaint as Exhibit S, fail to identify whether the payments were proceeds resulting from the sale of grain the debtor acquired from Mr. Winslow or at a point where Mr. Winslow's grain was commingled. The complaint merely alleges that the payments made by the debtor were applied by CNH Capital towards the repayment of the lines of credit for the sole benefit of Mr. Winslow. The court finds that the factual record, established by the complaint, is insufficient in detail to provide the court an accurate basis upon which to determine the viability of CNH Capital's contention that its perfected security interest in Mr. Winslow's grain continued after being sold to the debtor. This issue, raised by CNH Capital at this stage of the proceedings, is evidentiary and will not be considered by the court on a motion to dismiss. The tracing of CNH Capital's perfected security interest to payments the debtor made on account of the lines of credit must be considered on an ample and accurate factual record at a later date.

Finally, the court turns to the allegations that the payments received by CNH Capital from the debtor and its customers on account of the obligations under the lines of credit were made with the intent to hinder, delay or defraud entities to which the debtor was or became indebted to as a result. Claims for avoidance of actual fraudulent transfers under § 548(a)(1)(A) of the Bankruptcy Code must satisfy the particularity requirement imposed by Rule 9(b). In re Derivium Capital, LLC, 380 B.R. 429, 439 (Bankr. D.S.C. 2006) (citation omitted). Fraudulent intent may be inferred from the presence of certain "badges of fraud." Wappler, 2009 WL 4062220, at *8.[9] The presence of

---

[9] These "badges of fraud" considered under § 548(a)(1)(A) of the Bankruptcy Code include:

fraudulent intent requires an evaluation of the circumstances surrounding the transaction at issue, taking into account "factors that militate against a finding of fraudulent intent as well as considering those that suggest fraud." Jenkins, No. 12–5033, 2012 WL 6186347, at *6 (Bankr. W.D.N.C. Dec. 12, 2012) (citing  In re Schofield–Johnson, LLC, 462 B.R. 539, 543 (Bankr. M.D.N.C. 2011)).  As emphasized by the Fourth Circuit, "[w]hile each fact does not have to demonstrate actual fraud, the facts taken together must lead to the conclusion that actual fraud existed." Jeffrey Bigelow Design Grp., 956 F.2d at 483–84 (citation omitted); accord Tavenner v. Smoot, 257 F.3d 401, 408 (4th Cir. 2001).

The trustee's complaint alleges that the payments made to CNH Capital by the debtor and its customers in satisfaction of the obligations under the lines of credit were made with the intent

---

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of events and transactions under inquiry.

Ward v. Jenkins (In re Jenkins), No. 12–5033, 2012 WL 6186347, at *7 (Bankr. W.D.N.C. Dec. 12, 2012)(recognizing that although not identical, the list of factors courts utilize under 548(a)(1)(A) is similar to those considered under N.C. Gen. Stat. § 39–23.4(b) (citing In re Soza, 542 F.3d 1060, 1067 (5th Cir. 2008)).  N.C. Gen. Stat. § 39–23.4(a)(1), dealing with actual fraud, states that "a[ny] transfer made or obligation incurred by the debtor is fraudulent . . . if the debtor made the transfer or incurred the obligation . . . with the intent to hinder, delay, or defraud any creditor of the debtor . . . ." N.C. Gen. Stat.§ 39–23.4(a)(1).

to hinder, delay or defraud entities to which the debtor was or became indebted to as a result.  To support this allegation, the trustee asserts that Mr. Winslow, in his capacity as president of the debtor, caused the proceeds from the sale of the debtor's grain to be transferred to CNH Capital in repayment of the lines of credit, which were used solely to fund his personal farming operations at Winslow Farms.  The debtor never realized the benefit of these grain sale proceeds because they were diverted to CNH Capital and Meherrin for Mr. Winslow's personal benefit, leaving the debtor unable to satisfy its obligations to other lenders, grain suppliers and farmers.

The court finds that the complaint fails to satisfy the particularity requirement of Rule 9(b) because although the trustee alleges wrongdoing on Mr. Winslow's behalf, the complaint is devoid of any description of the conduct constituting fraud.  Absent a particularized showing of such facts or circumstances constituting actual fraud, the allegations in the complaint fail to satisfy the heightened pleading requirements of Rule 9(b).

## CONCLUSION

Based on the foregoing, the CNH Capital's  motion to dismiss is **ALLOWED IN PART** and **DENIED IN PART.**  The complaint fails to state, with plausibility, claims for relief  to avoid the lines of credit (both the obligations incurred and security interests granted thereunder) executed prior to 2009 as constructively fraudulent pursuant to § 548(a)(1)(B) and, therefore, are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b).  As for the payments received in satisfaction of these avoidable lines of credit or those payments made prior to 2009, the complaint has failed to plead facts sufficient to demonstrate that either are avoidable.  Likewise, the trustee's allegations that the payments received by CNH Capital in satisfaction of the debtor's obligations under the lines of credit were insufficient to establish, with

21

the particularity required under Fed. R. Civ. P. 9(b), that the payments were actual fraudulent transfers made with the intent to hinder, delay or defraud the debtor's creditors.

The complaint, however, contains facts sufficient to demonstrate a plausible claims for relief to avoid and recover, as constructively fraudulent, the obligations incurred pursuant to the line of credit executed on February 18, 2009, as well as the forty–two payments received by CNH Capital in satisfaction thereof.

**END OF DOCUMENT**